IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

SEAF ROWE RHODEN,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Petitioner,　　　　　　　)　　CIVIL ACTION NO.: CV513-070
　　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA,　　　　　　)　　(Case No.: CR511-018)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Respondent.　　　　　　　 )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Seaf Rhoden ("Rhoden"), who is currently incarcerated at the Federal Correctional Institution-Low Camp in Jesup, Georgia, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Government filed a Response, and Rhoden filed a Reply. The undersigned conducted evidentiary hearings on this matter on October 8 and 24, 2013, and heard testimony from: Rhoden; John Thigpen ("Thigpen"), Rhoden's trial counsel; and Lisa Jacobs ("Jacobs"), with the United States Probation Office in Savannah, Georgia. For the reasons which follow, Rhoden's motion should be **DENIED**.

## STATEMENT OF THE CASE

Rhoden was convicted, after a jury trial in this Court, of one count of conspiracy to manufacture 100 or more marijuana plants, in violation of 21 U.S.C. § 846. The Honorable Lisa Godbey Wood sentenced Rhoden to 60 months' imprisonment, the statutory minimum sentence. Rhoden did not file a direct appeal.

In his motion, Rhoden asserts that his attorney, John Thigpen, was ineffective because he did not inform Rhoden of his eligibility for a reduction in his sentence based on the "safety valve", and because he did not file a notice of appeal on Rhoden's behalf. The Government contends that Rhoden's motion is without merit and should be denied.

## DISCUSSION AND CITATION TO AUTHORITY

Criminal defendants have a right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Id. at 685-86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).

### I.  Safety Valve

Rhoden asserts that Thigpen was ineffective because he failed to investigate Rhoden's eligibility for the safety valve for sentencing purposes. Rhoden also asserts that Thigpen failed to inform him that, to obtain a reduced Guidelines sentence, Rhoden would need to provide the Government with all information he had concerning the offense for which he was convicted. Rhoden contends that, but for counsel's deficient performance and if he had satisfied the requirements for eligibility for the safety valve, he would have been sentenced to 33 to 41 months' imprisonment rather than the 60

2

months' imprisonment he received. Rhoden alleges that requiring the Government to meet its burden by going to trial does not exclude him from eligibility for the safety valve, as such was available to him until sentencing. Rhoden asserts, through counsel, that his willingness to disclose his conduct to law enforcement officers was "evidenced at the very least during the evidentiary hearing." (Doc. No. 20, p. 3).

The Government asserts that Rhoden's silence about his offense conduct was not the result of Thigpen's deficient performance, as Thigpen told Rhoden that any statement made to law enforcement officers could benefit him. The Government also asserts that Rhoden was unwilling to admit his role in the offense to law enforcement at least up until sentencing. The Government avers that, even if Thigpen had performed deficiently, Rhoden cannot establish prejudice to satisfy the Strickland standard. The Government alleges that Rhoden still refused to detail his involvement or admit to his guilt, which makes it impossible for the Court to determine whether Rhoden is entitled to his requested relief. In fact, the Government asserts, Rhoden admitted during the evidentiary hearing that Thigpen told him he could obtain a lower sentence by cooperating with the Government. The Government asserts that Rhoden was adamant that he was never going to accept any responsibility or admit anything.

In certain circumstances,

> the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that--
>
>> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

AO 72A
(Rev. 8/82)

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f). Section 5C1.2 of the United States Sentencing Guidelines ("U.S.S.G."), or the so-called "safety-valve" provision, enables a district court to sentence a defendant without regard to the statutory minimum for certain offenses if all five requirements of section 3553(f) are met. United States v. Milkintas, 470 F.3d 1339, 1344 (11th Cir. 2006). A defendant who satisfies these criteria is eligible for a two-level reduction in offense level. U.S.S.G. § 2D1.1(b)(11). The burden is on the defendant to show that he has met all of the safety-valve requirements. United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997). This final factor is a "tell-all" provision: in order to satisfy it, the defendant has an affirmative responsibility to "truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct." United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004) (quotation marks and citation omitted) (emphasis in original). "It is well-settled that a district court

4

is not authorized to sentence a defendant below the statutory mandatory minimum unless . . . the defendant falls within the safety-valve of 18 U.S.C. § 3553(f)." United States v. Green, 425 F. App'x 843, 845-46 (11th Cir. 2011) (citing United States v. Castaing–Sosa, 530 F.3d 1358, 1360 (11th Cir. 2008)).

The Government concedes that Rhoden meets the first four (4) requirements of section 3553(f). (Doc. No. 5, p. 6). However, the Government asserts, the fifth circumstance of § 3553(f) was not present, and Rhoden is not entitled to relief pursuant to the safety valve. As to this assertion, the undersigned recounts the following portions of the testimony given during the evidentiary hearing. Rhoden testified that Thigpen explained before the trial of this case that Rhoden could receive a two-point reduction in his offense level due to the safety valve. (Doc. No. 18, pp. 7–9). According to Rhoden, Thigpen never explained to him that he was eligible for the safety valve reduction after his trial, even though, Rhoden asserts, he "begged" Thigpen to tell him if there was anything Rhoden could do to help himself after trial. (Id. at p. 10). Rhoden asserts that Jacobs asked him, when he met with her prior to sentencing, whether there was anything he could do to lower his points. Rhoden also asserts that Jacobs contacted Thigpen, who in turn told Rhoden that it would not matter at sentencing how low he was able to get his points. (Id. at p. 11). Rhoden contends that his points total was lowered based on the number of marijuana plants for which he was deemed responsible. (Id. at p. 12). Rhoden alleges that he asked Thigpen during the sentencing hearing if there was anything he could do to help himself, and Thigpen "whispered in [his] ear it is going to cost . . . another $7000[,] and I can promise you, you are wasting your money." (Id.

AO 72A
(Rev. 8/82)

at p. 13). Rhoden also alleges that Thigpen did not explain his options and acted like he did not care.

On cross-examination, Rhoden stated that he understood that he could have received a lower sentence had he cooperated with the Government by pleading guilty but that Thigpen did not explain to him how the safety valve would have helped him. Rhoden also stated that he now understands that, to qualify for the safety valve, he would have had to go to the Government and "truthfully explain" his involvement in the offense. (Id. at p. 25). Rhoden asserted that Thigpen never advised him that he could have told the Government of his involvement in the case, but Rhoden would have provided the Government with information regarding his involvement. (Id. at p. 39).

Thigpen testified that he has been practicing in the area of federal criminal defense for 34 years, and Rhoden retained him to represent him during the trial of this criminal prosecution. Thigpen stated that he informed Rhoden that he ordinarily did not handle federal appellate work but would put him in touch with someone who did, if Rhoden were convicted and could afford to pay that attorney. (Id. at pp. 28–29). Thigpen testified that he advised Rhoden that he should plead guilty rather than proceed to trial after receiving the discovery in this case because the evidence "was overwhelming against him." (Id. at p. 29). Thigpen asserted that, after receiving a proposed plea agreement from the Government, he discussed with Rhoden that he could qualify for the safety valve, but he would have to admit his offense conduct and tell the Government everything it asked him. Thigpen asserted that Rhoden "was absolutely not" willing to do that. (Id. at p. 30). Thigpen averred that he discussed both the acceptance of responsibility and the safety valve credits under the sentencing

guidelines; however, Thigpen stated that Rhoden insisted that he did nothing wrong, that he "was wrongfully convicted", and that he was "not going to ever say that [he] was involved." (Id. at p. 32). Thigpen stated that Rhoden was "very, very adamant that he was never going to accept any responsibility or admit anything." (Id.). Thigpen also stated that he understood that Rhoden would be eligible for the safety valve at any time prior to sentencing if he were to provide truthful testimony to the Government, but Rhoden "absolutely refused to do that at any point in time." (Id. at p. 36).

Jacobs testified that she met with Rhoden after he was convicted to discuss his criminal history, personal background information, and finances so that she could prepare Rhoden's Pre-Sentence Investigation report ("PSI"). Jacobs stated that Thigpen objected to the portion of the PSI regarding the number of plants for which Rhoden would be responsible. Based on this objection and her review of the evidence, Jacobs reduced the number of plants involved. Jacobs stated that she did not recall Rhoden ever asking her if there was a way that he could reduce his guideline range, yet she specifically stated that she never discussed the safety valve or any possible reduction in points with Rhoden. (Doc. No. 19, pp. 6–7).

The undersigned finds the testimony given by Thigpen and Jacobs at the evidentiary hearings more credible than that given by Rhoden. Davis v. United States, 404 F. App'x 336, 338 (11th Cir. 2010) (stating that the determination of the credibility of a testifying attorney during an evidentiary hearing on an ineffective assistance claim is within the province of the district court, which has the opportunity to observe and study the witness). Thigpen advised Rhoden of the availability of the safety valve and his opportunity to avail himself to this provision prior to sentencing. Rhoden did not avail

7

himself of this opportunity because he was unwilling, at least up until the date of sentencing, to provide the Government with a truthful and complete account of his involvement in the criminal offense for which he was convicted. It was only during the evidentiary hearing on this section 2255 motion that Rhoden stated he would have provided the Government with information of his involvement in this case because it was at that time he understood the safety valve provision. However, there is no evidence before the Court that Rhoden would have provided the Government with all relevant information before sentencing, which is the critical time for purposes of § 3553(f)(5). Assuming without deciding that Thigpen failed to discuss the safety valve provision with Rhoden prior to sentencing, Rhoden fails to show that he would have provided the Government with the necessary information but for Thigpen's deficient performance. Rhoden fails to establish that he was prejudiced by the purported lack of discussion between him and Thigpen about the safety valve because there is nothing indicating that Rhoden would have satisfied all five (5) requirements of section 3553(f). Rhoden is not entitled to his requested relief.

## II.  Issues Regarding an Appeal

A defendant can file a direct appeal of his federal conviction as a matter of right. Thompson v. United States, 504 F.3d 1203, 1206–07 (11th Cir. 2007). A "lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). The Eleventh Circuit Court of Appeals "has interpreted Flores-Ortega to mean that it is per se unreasonable to fail to follow a client's explicit request to file an appeal." Gomez-Diaz v. United States, 433 F.3d 788, 791–92 (11th Cir. 2005). Even if a client

has not made a specific request of his attorney to file an appeal, "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . ., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480.

The denial of counsel on appeal, and more seriously, the denial of an appeal altogether as a result of ineffective assistance of counsel, deprives the accused of counsel at a "critical stage" and therefore carries a presumption of prejudice. Id. at 483. However, "counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." Id. at 484. Thus, to invoke the presumption of prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. "When counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Id. A pro se defendant is not required to show that his appeal has any arguably meritorious grounds for appeal; all that is required is for the "defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed." Ashcraft v. Sec'y, Fla. Dep't of Corr., 340 F. App'x 600, 602 (11th Cir. 2009). "The duty to consult includes two obligations: to advise the client 'about the advantages and disadvantages of taking an appeal,' and to make a 'reasonable effort to discover' whether the client wants to appeal." Baughman v. United States, 319 F. App'x 866, 869 (11th Cir. 2009) (internal citation omitted).

9

### A. Failure to File an Appeal

Rhoden contends that Thigpen failed to file an appeal on his behalf, even after Rhoden "explicitly informed" Thigpen that he wanted to appeal his conviction and sentence. (Doc. No. 1, p. 4). The Government asserts that Rhoden did not make a request—explicit or otherwise—for Thigpen to file an appeal on his behalf.

Rhoden testified that Thigpen did not discuss his right to appeal, did not have Rhoden sign a document waiving his right to appeal, did not discuss the process of an appeal including time limitations, and did not explain the difference between appealing the trial and his sentence. Rhoden stated that he wanted to file an appeal, but Thigpen told him it would cost him $7,000 and would be a waste of his money. Rhoden also stated that he wanted to file an appeal but did not know what to do. (Doc. No. 18, pp. 14–17).[1] Rhoden declared that he remembers Judge Wood informing him at sentencing that he had 14 days to file an appeal and that he could ask the Court to appoint a lawyer on appeal if he did not have the money to pay an attorney of his own choosing. (Id. at p. 19). Rhoden asserted that Thigpen did not advise him what his rights were, yet he "thought [Thigpen] was obligated to tell [him]" what his next step was. (Id.). Rhoden also asserted that, although Judge Wood informed him he had the right to appeal, his understanding was that Thigpen had to be the one who filed the appeal on his behalf. (Id. at p. 22). Rhoden admitted that he did not write or call Thigpen within the year after his sentencing to ask Thigpen why he did not file an appeal on his behalf.

---

[1] Rhoden also testified that he did not tell Thigpen he wanted to file an appeal, only that he (Rhoden) wanted to file an appeal but did not come out and tell Thigpen that directly. (Doc. No. 18, p. 16).

AO 72A
(Rev. 8/82)

Thigpen stated that he explained to Rhoden that he typically did not handle federal appeals, but he would put Rhoden in contact with someone who did, should Rhoden need those services and could afford it. Otherwise, the Court would appoint an attorney for Rhoden on appeal. (Id. at pp. 30, 33). Thigpen asserted that he reminded Rhoden that Judge Wood explained to him that he had a certain number of days in which to ask the Clerk of Court to file a notice of appeal on his behalf. Thigpen also asserted that Rhoden did not call or write him during the time Rhoden had to file an appeal. (Id.). Thigpen testified that he did not tell Rhoden that an appeal would cost him $7,000. Thigpen testified that he would not have filed an appeal on Rhoden's behalf as a retained attorney, as he has only handled federal appeals in appointed cases. (Id. at pp. 33–34). The credible evidence is that Thigpen consulted with Rhoden about his appeal.

During the sentencing hearing, Judge Wood informed Rhoden:

Mr. Rhoden, you are now advised that it is your right to appeal from this sentence within fourteen days of today's date. Failure to appeal within the fourteen-day period shall act as a waiver of your right to appeal. The Government may, likewise, file an appeal from this sentence.

You are also advised that you are entitled to the assistance of counsel in making any such appeal. If you are unable to afford a lawyer, one will be provided to assist you. In fact, if you request, the Clerk of Court can prepare and file a notice of appeal on your behalf.

. . . .

If you no longer have sufficient money to have a lawyer represent you, then you are entitled to have one be appointed. And you can fill out the paperwork to have that done. Do you understand?

11

(Doc. No. 21, pp. 8–9). Rhoden responded, "Yes, ma'am, Your Honor." (Id. at p. 9). Judge Wood asked Thigpen to confer with Rhoden "and advise him in that regard." (Id.).

The credible evidence before the Court reveals that Rhoden did not explicitly tell Thigpen that he wanted to file an appeal even after Thigpen counseled him about that right. Thus, Thigpen's failure to file an appeal on Rhoden's behalf cannot be considered deficient performance. Rhoden was made aware, during sentencing, of his right to file an appeal, to have an attorney either retained or appointed to assist him, and that the Clerk of Court could also file a notice of an appeal on his behalf if he requested. Rhoden stated that he understood that. Rhoden was advised of his appellate rights, and he stated he understood those rights at sentencing. He was also advised of his appellate rights by Thigpen. Rhoden is not entitled to his requested relief on this ground.

### B. Failure to Discuss the Advantages and Disadvantages of Filing an Appeal[2]

Rhoden avers that he and Thigpen agree that they never had a discussion about the pros and cons of filing an appeal. Rhoden alleges that he was prejudiced by this failure because he wanted to file an appeal.

The Government asserts that Thigpen had no duty to consult with Rhoden about an appeal. The Government alleges that there is a duty to consult with a defendant about an appeal when there is reason to believe that a rational defendant would want to appeal or when a defendant reasonably demonstrated to counsel that he was interested in appealing. The Government contends that neither situation is present in this case.

---

[2] The Court notes the Government's contention that this claim is new and does not relate back to Rhoden's original section 2255 motion. The undersigned offers no opinion as to whether the Government is correct and instead will address the merits of Rhoden's claim.

12

As noted above, Rhoden did not inform Thigpen that he wanted to file an appeal. There is no evidence that there was any reason to believe that Rhoden, as a rational defendant, would want to appeal. Judge Wood informed Rhoden that she reviewed all applicable documentation and found no reason to depart from the sentence called for by the guidelines. (Doc. No. 21, p. 6). While the undersigned recognizes that Rhoden need not show that any ground raised on appeal need have been meritorious, Rhoden has not shown that he, as a rational defendant, would have wanted to appeal. Moreover, Rhoden was advised of his appellate rights during sentencing and by Thigpen. In short, Rhoden has failed to show that Thigpen performed deficiently. Rhoden is not entitled to his requested relief.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Rhoden's 28 U.S.C. § 2255 motion be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 17th day of January, 2014.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE